UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| ELAINE MALONE and PATRICIA MCKEOUGH, on Behalf of The University of Chicago Retirement Income Plan for Employees, Nova Southeastern University 403(b) Plan, and All Other Similarly Situated Plans,<br><br>Plaintiffs,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)** |
|---|---|

## I. INTRODUCTION

1. Plaintiffs Elaine Malone and Patricia McKeough ("Plaintiffs"), bring this action on behalf of The University of Chicago Retirement Income Plan for Employees (the "UC Plan") and the Nova Southeastern University 403(b) Plan (the "Nova Plan"), and on behalf of all similarly-situated defined contribution pension plans (collectively, the "Plans"), that suffered losses as a result of the breaches of fiduciary duty, prohibited transactions and unjust enrichment of Defendant Teachers Insurance and Annuity Association of America ("TIAA" or "Defendant"). Plaintiffs bring this action by and through their undersigned attorneys based upon their personal knowledge and information obtained through counsel's investigation. Plaintiffs anticipate that discovery will uncover further substantial support for the allegations in this Complaint.

## II. NATURE OF THE ACTION

2. Plaintiffs' claims arise from the failure of Defendant, which is both a fiduciary and party in interest of the Plans, to comply with ERISA's prohibited transaction rules; to discharge its duties with respect to the Plans solely in the interests of the participants and beneficiaries of the Plans and for the exclusive purpose of providing them with benefits and defraying reasonable expenses of administering the Plans; and to exercise the required care, skill, prudence and diligence in administering the Plans and the Plans' assets between October 14, 2009 and the present (the "Class Period"). *See* ERISA §§ 404(a), 406, 29 U.S.C. §§ 1104(a), 1106.

3. Defendant misused its dual position as Plan recordkeeper and seller to the Plans of group annuity contracts to usurp fiduciary authority and control from the Plans' named fiduciaries and take excessive compensation from Plan assets. In accordance with standard industry practice, the fees charged to the Plans for Defendants' recordkeeping services are paid from the investment fees paid on Defendant's investment products, including annuity contracts and pooled investment funds. This practice is known in the industry as revenue sharing. But, contrary to standard industry practice, Defendant did not allow the Plans to use investment fees to pay for the services of third-party recordkeepers.

4. Because Defendant's recordkeeping contracts are of substantially shorter duration than its group annuity contracts, by not allowing revenue sharing with third-party recordkeepers, Defendant effectively blocked the Plans from changing recordkeepers because the Plans could not reasonably pay a third-party recordkeeper without the benefit of revenue sharing without essentially paying twice for recordkeeping and Plan administration.

5. Defendant did not disclose that it would not share revenue with third-party recordkeepers. Defendant's unilateral decision not to revenue share with other recordkeepers, but

to retain for itself such funds, effectively imposed an undisclosed and non-contractual penalty on the Plans to hold the Plans hostage through the remaining period of the group annuity contract. The Plans and their participants and beneficiaries were harmed because the Plans paid more for administrative services than they could and should have.

6. This action is brought on behalf of the Plans pursuant to §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3), of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against TIAA for violations of ERISA's fiduciary duty and prohibited transaction rules, and under the federal common law of ERISA for unjust enrichment.

7. Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all similarly-situated defined contribution plans.

## III. JURISDICTION AND VENUE

8. **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title I of ERISA.

9. **Personal Jurisdiction.** This court has personal jurisdiction over Defendant because it is headquartered and transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). This Court also has personal jurisdiction over Defendant pursuant to Fed. R Civ. P. 4(k)(1)(A) because it would be subject to the jurisdiction of a court of general jurisdiction in New York.

10. **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA for which relief is sought occurred

in this District, and/or Defendant resides and/or may be found in this district. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV. PARTIES

11. Plaintiff Malone is a resident of Park Forest, Illinois. Plaintiff is a participant in the UC Plan.

12. Plaintiff McKeough is a resident of Coral Springs, Florida. Plaintiff is a participant in the Nova Plan.

13. TIAA—a company that provides life insurance and retirement annuities—was established in 1918 as a legal reserve life insurance company under the insurance laws of the State of New York. Its principal place of business is New York, NY.

## V. FACTUAL ALLEGATIONS

14. Defendant provides two types of services for defined contribution retirement plans. First, it serves as a plan recordkeeper. In that capacity, it provides a variety of administrative services that are necessary for the operation of the plans. Defendant charges a "servicing fee" for these services.

15. Defendant also provides investment services to plans. In particular, it offers group annuity contracts that include various pooled fund offerings, such as pooled accounts and mutual funds. Defendant charges a fee for these investment services known as the "investment fee."

16. Defendant agrees with its plan customers to a "recordkeeping offset," also known as "revenue sharing," pursuant to which it applies a portion of the investment fee it is paid for

investment services against the servicing fee it is owed for recordkeeping. This offset reduces the servicing fee that would otherwise be charged to a plan for administrative services.

17. According to fiduciary advice Defendant provides to plan fiduciaries entitled "Deciding what is reasonable: Assessing fees using value and outcomes," (the "Fiduciary Advice"), Plan fiduciaries have a number of duties in connection with "their long-standing fiduciary obligation to assess the reasonableness of their Plan's fees," including the investment and servicing fees charged by Defendant.

18. For example, fiduciaries must require disclosure of and evaluate all "indirect compensation" paid to plan service providers such as Defendant.

19. Fiduciaries must "understand any potential conflicts of interest" of plan service providers such as Defendant.

20. Fiduciaries must recognize that "in the majority" of plans, servicing fees "are typically covered in whole or in part by a recordkeeping offset agreement…." Accordingly, they must insure that any recordkeeping offsets are clearly disclosed and stated in any applicable agreements. And, they must "understand all of the fees associated" with the plans, including "reviewing how recordkeeping offsets are handled by your provider…."

21. Fiduciaries must use this information as part of a process to "regularly monitor" plan service providers such as Defendant.

22. Finally, fiduciaries must determine if any changes are necessary in plan investment options, services and/or service providers based on this monitoring and evaluation.

23. Defendant served as the Plans' recordkeeper under Custodial and Recordkeeping Agreements ("Recordkeeping Agreement') with a five-year contract period.

24. The Recordkeeping Agreement provides that assets in Plaintiffs' and other participants' Plans accounts would be invested in annuity contracts offered by Defendant.

25. Pursuant to the Recordkeeping Agreement, Defendant maintained records of purchases, sales and investments in Defendant's annuity contracts.

26. Pursuant to the Recordkeeping Agreement, recordkeeping fees could be paid through the recordkeeping offset earned by Defendant from the annuity contracts.

27. Defendant sold to the Plans group annuity contracts with a ten-year contract period.

28. Pursuant to the group annuity contracts, Defendant offered the Plans a menu of investment options that could be selected by the Plans for participant investment.

29. Through the UC Plan, Plaintiff Malone invested 100% of the assets in her Plan account in a TIAA Traditional Annuity, TIAA Annuity Contract D055634-2. Pursuant to this annuity, cash transfers and withdrawals could only be made "in 10 annual installments."

30. Through the Nova Plan, Plaintiff McKeough invested almost 100% of the assets in her Plan account in a TIAA Traditional Annuity, TIAA Annuity Contract D123535-9. Pursuant to this annuity, cash transfers and withdrawals could only be made "in 10 annual installments."

31. As Defendant admits is typical in the industry, and as Defendant disclosed, the Plans' servicing fees owed to Defendant under the Recordkeeping Agreements were paid through a recordkeeping offset of investment fees paid to Defendant pursuant to the annuity contracts.

32. But, contrary to typical practices in the industry, Defendant will not permit the recordkeeping offset to be used to pay servicing fees of any recordkeeper other than itself.

33. Defendant failed to disclose when it entered into the Recordkeeping Agreements and the annuity contracts that it would not permit investment fees collected by Defendant to be offset against servicing fees charged by any third-party recordkeeper pursuant to a recordkeeping offset.

34. Defendant's restriction against paying the recordkeeping offset to third-party recordkeepers was not a subject of negotiation with the Plans, and it was not a term of any contract into which the Plans entered with Defendant.

35. Defendant's conduct was particularly egregious in this case in that the Recordkeeping Agreements had a five year term, but the annuity contracts had a ten year term. Accordingly, if the Plans elected to change recordkeepers at the end of the five year term, they would be denied any recordkeeping offset funds to pay the new third-party recordkeeper for at least five years. Moreover, Defendant would receive excessive compensation in that it would retain the full amount of the investment fee without performing any of the recordkeeping services that previously had been paid for by the recordkeeping offset.

36. Defendant's action put the Plans in the position of either 1) allowing Defendant to remain as recordkeeper, and paying higher compensation than it would have paid a new, lower-cost recordkeeper, or 2) paying unnecessary, redundant and even more excessive compensation to Defendant if the Plans engaged a new recordkeeper to replace Defendant.

37. Because Defendant does not permit the recordkeeping offset to be paid to a new, third-party recordkeeper, it is effectively financially impossible for the Plans to change recordkeepers at the end of the five-year Recordkeeping Agreement. In this manner, Defendant sought to hold the Plans financially hostage to the Recordkeeping Agreements for the duration of the ten-year annuity contracts.

38. Defendant exploited the undisclosed conflict of interest in its positions as both recordkeeper and annuity vendor to wrongfully take advantage of the Plans. Moreover, contrary to its Fiduciary Advice, Defendant denied the Plans access to information they needed to evaluate the conflict of interest.

39. Defendant's restriction on use of the recordkeeping offset constituted a penalty that precluded the Plans from contracting with a third-party recordkeeper under better terms for the Plans, which would have defrayed the reasonable expenses of administering the Plans as required under ERISA §§ 403(c)(1), 404(a)(1)(A)(ii), 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A)(ii).

40. Because of the penalty, the Plans do not have a meaningful opportunity to choose a new lower-cost recordkeeper to replace Defendant.

41. Defendant thus held and retained assets of the Plans and exercised authority and control respecting the management and disposition of the Plans' assets.

42. Defendant served as a *de facto* or functional fiduciary to the Plans under ERISA.

43. The Plans and their participants and beneficiaries were harmed because Defendant did not permit the sharing of the recordkeeping offset with third-party recordkeepers, which caused the Plans to pay more for administrative services than they otherwise could have.

44. The Plans and their participants and beneficiaries were harmed by Defendant's retention of excessive compensation from Plan assets.

## VI. THE RELEVANT LAW

45. Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary with respect to a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting

management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

46. ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in relevant part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

47. These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). They entail, among other things, the duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves. They also entail the duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

48. ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits certain transactions between the plan and a party in interest. Specifically, ERISA § 406(a)(1) provides:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect —

> . . .
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan….

49. ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits certain transactions between the plan and fiduciaries. Specifically, ERISA § 406(b) provides:

> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

50. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

51. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit for appropriate relief under ERISA § 409.

52. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan fiduciary, participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

## VII. CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the UC and Nova Plans and similarly-situated plans (the "Class" or "Plans") defined as follows:

> All ERISA defined contribution plans for which TIAA serves or has served as the plan's recordkeeper and group annuity contract provider from October 14, 2009 to present (the "Class Period"). Excluded from the Class are plans sponsored by TIAA or its affiliates or subsidiaries.

54. The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes more than 100 plans.

55. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendant as alleged herein, and all members of the Class are similarly affected by Defendant's wrongful conduct.

56. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a. Whether Defendant is a fiduciary under ERISA.

b. Whether Defendant's acts as alleged above breached its fiduciary duties under ERISA.

c. Whether Defendant's acts as alleged above breached ERISA's prohibited transaction rules.

d. Whether monies received and retained by Defendant were Plan assets.

e. Whether an affirmative defense to a prohibited transaction claim applies and can be satisfied by Defendant.

f. Whether Defendant's acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiffs, on behalf of the Plans and the Class, are entitled.

57. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

58. Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

59. In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

60. In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VIII. CAUSES OF ACTION

### Count I: Prohibited Transactions—Sec. 406(b)

61. Plaintiffs incorporate herein the allegations set forth above.

62. As alleged above, Defendant is a *de facto* or functional fiduciary pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus it is bound by the duties of loyalty, exclusive purpose, prudence, care, and other duties set forth in ERISA § 404, 29 U.S.C. § 1104, and the prohibited transaction provisions set forth in ERISA § 406, 29 U.S.C. § 1106.

63. Defendant assumed fiduciary authority and control, as alleged above, over factors that determine the actual amount of its compensation. Defendant failed to disclose material information about its recordkeeping offset practices to the Plans, which resulted in Defendant having a source of hidden revenue, not negotiated with or agreed upon by the Plans. Defendant effectively imposed a penalty upon the Plans that sought to entrap the Plans in a recordkeeping contract with Defendant, which infringed upon other Plan fiduciaries' authority and control over such decisions and denied them a meaningful opportunity to choose a new lower-cost recordkeeper to replace TIAA. These practices led Defendant to receive excessive compensation, to which it was not entitled, at the expense of the Plans, their participants and beneficiaries.

64. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from dealing with the assets of a Plan in its own interest or for its own account.

65. Defendant violated ERISA § 406(b)(1) in that it dealt with assets of the Plans for its own interest or for its own account through its receipt and retention of recordkeeping offset payments that it only received due to the hidden penalty that it imposed on the Plans.

66. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), prohibits a fiduciary from acting in any transaction involving a Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or participants or beneficiaries.

67. Defendant repeatedly and continuously engaged in transactions on behalf of parties whose interests are adverse to the interests of the Plans and the Plans' participants and

beneficiaries – namely, TIAA itself, as well as affiliates and/or subsidiaries of TIAA that sell products and/or services to the Plans.

68. Defendant violated ERISA § 406(b)(2) in that it acted in transactions involving the Plans on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plans or their participants or beneficiaries through Defendant's receipt and retention of recordkeeping offset payments that it only received due to the hidden penalty that it imposed on the Plans.

69. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a fiduciary from receiving any consideration for its own personal account from any party dealing with a Plan in connection with a transaction involving the assets of the Plan.

70. Defendant violated ERISA § 406(b)(3) in that it received excessive recordkeeping offset payments, as alleged above, dealing with the Plans in connection with Plan investments.

**Count II: Prohibited Transactions—Sec. 406(a)**

71. Plaintiffs incorporate herein the allegations set forth above.

72. Defendant is a party in interest under ERISA in that it provided services to the Plans. ERISA § 3(14)(B), 29 U.S.C. 1002(14)(B).

73. Defendant is a covered service provider in that it earned more than $1,000 from the Plans.

74. ERISA § 406(a)(1)(C), 29 U.S.C. 1106(a)(1)(C), provides that a fiduciary shall not cause a Plan to engage in a transaction if it knows that the transaction constitutes the direct or indirect furnishing of services by a party in interest to a Plan.

75. Defendant provided services to the Plans pursuant to the Recordkeeping Agreements and the annuity contracts and received the service and investment fees in exchange for those services.

76. These transactions violated ERISA § 406(a)(1)(C), 29 U.S.C. 1106(a)(1)(C) in that they provided for the direct or indirect furnishing of services by a party in interest to a Plan.

77. ERISA § 406(a)(1)(D), 29 U.S.C. 1106(a)(1)(D) prohibits any transfer to, or use by or for the benefit of, a party in interest, of any assets of the Plans.

78. The service and investment fees paid to Defendant were Plan assets.

79. These payments violated ERISA § 406(a)(1)(D), 29 U.S.C. 1106(a)(1)(D) in that they constituted a transfer to, or use by or for the benefit of, a party in interest, of any assets of the Plans.

80. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a Plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the Plan any losses to the Plan resulting from each such breach and to restore to the Plan any profits the fiduciary made through use of the Plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

81. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a Plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

82. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

83. Defendant is liable to personally make good to the Plans any losses to the Plans resulting from these prohibited transactions under 29 U.S.C. § 502(a)(2), 29 U.S.C. § 1132(a)(2).

84. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiffs.

**Count III: Breach of Fiduciary Duty**

85. Plaintiffs incorporate herein the allegations set forth above.

86. As alleged above, Defendant is a *de facto* or functional fiduciary pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus it is bound by the duties of loyalty, exclusive purpose, prudence, care, and other duties set forth in ERISA § 404, 29 U.S.C. § 1104.

87. Defendant assumed fiduciary authority and control, as alleged above, over factors that determine the actual amount of its compensation. Defendant failed to disclose material information about its revenue offset practices to the Plans, which resulted in Defendant having a source of hidden revenue, not negotiated with or agreed upon by the Plans. Defendant effectively imposed a penalty upon the Plans that sought to entrap the Plans in Recordkeeping Agreements with Defendant, which infringed upon other Plan fiduciaries' authority and control over such decisions and denied them a meaningful opportunity to choose a new lower-cost recordkeeper to replace TIAA. These practices led Defendant to receive excessive compensation, to which it was not entitled, at the expense of the Plans, their participants and beneficiaries.

88. Defendant breached its fiduciary duties under ERISA § 404(a)—particularly its duties of loyalty, exclusive purpose, prudence, and disclosure—by taking actions usurping the

discretionary authority and control of the Plans' named fiduciaries in order to increase Defendant's own compensation, as alleged above.

89. Defendant had a duty not to mislead the Plans as to any material fact concerning Plan assets and the administration, operation, and maintenance of the Plans. Defendant also had the affirmative duty to deal honestly and fairly with the Plans, including the duty to disclose to the Plans material information concerning Plan assets and the administration, operation and maintenance of the Plans. Defendant's failure to disclose its policy or practice not to provide revenue offset payments to third-party recordkeepers breached its duties to the Plans under ERISA § 404(a).

90. The monies improperly appropriated by Defendant—together with any income, gains or losses—were Plan assets that were to be held only for the exclusive purpose of providing benefits to participants in the Plans and their beneficiaries and defraying the reasonable expenses of administering the Plans. Defendant breached its fiduciary duties under ERISA § 404(a) by receiving and retaining excessive compensation, as alleged above.

91. Defendant is liable to personally make good to the Plans any losses to the Plans resulting from each breach under ERISA §§ 409(a), 502(a)(2), 29 U.S.C. §§ 1109(a), 1132(a)(2).

92. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiffs.

**Count IV: Federal Common Law Unjust Enrichment under ERISA**

93. Plaintiffs incorporate herein the allegations set forth above.

94. Defendant induced the Plans to select it as recordkeeper and group annuity contract provider by failing to disclose its policy or practice of not providing revenue offset payments to third-party recordkeepers.

95. Because Defendant would retain to itself such revenue offset monies if the Plans engaged a new recordkeeper, it failed to disclose a source of its compensation as a provider to the Plans.

96. Defendant retained monies that exceeded the value of the services that Defendant provided to the Plans, and which were not disclosed in contract negotiations and contractual terms to the Plans. As such, Defendant's retention of such revenue offset payments constituted unreasonable compensation to Defendant, which Defendant would not have received but for its role as a service provider to the Plans.

97. The excess compensation received by Defendant constitutes the receipt of something of value, to which Defendant was not reasonably entitled, and that in good conscience should have been paid to the Plans.

98. Defendant profited unjustly from the foregoing conduct, extracting and retaining compensation as a result of its control of Plan assets over and above any amount that could be considered reasonable compensation for the services Defendant provided to the Plans. These excess fees are directly traceable to Defendant and can be determined through a full accounting of the fees it received in connection with the Plans.

99. Under the federal common law of ERISA, the Plans and their participants and beneficiaries are entitled to equitable restitution from Defendant of the excess amounts paid to Defendant from the Plans, the Plan investment options, and any other source due to Defendant's control of Plan assets, as well as any other appropriate equitable remedy pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy Defendant's unjust enrichment.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment:

A. Certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

B. Ordering Defendant to restore to the Plans and the Class any losses, including lost-opportunity costs, resulting from fiduciary breaches and prohibited transactions committed by Defendant or for which it is liable;

C. Ordering Defendant to restore to the Plans and the Class all profits Defendant made resulting from fiduciary breaches and prohibited transactions committed by it or for which it is liable;

D. Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plans and the Class;

E. Awarding, declaring or otherwise providing Plaintiffs, the Plans and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper and such appropriate equitable relief as the Court may order, including damages, surcharge, an accounting, restitution, equitable lien, constructive trust, injunctive relief, or other remedy;

F. Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

G. Awarding pre-judgment and post-judgment interest.

DATED: October 13, 2015

Respectfully submitted,

By: _Kevin Barrett____________________

Kevin Barrett
Bailey & Glasser LLP
137 Betsy Brown Road
Port Chester, NY 10573
Telephone: (646) 776-8580

kbarrett@baileyglasser.com

Gregory Y. Porter, *pro hac vice* to be filed
Ryan T. Jenny, *pro hac vice* to be filed
BAILEY & GLASSER LLP
1054 31st Street, NW
Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Robert A. Izard
Mark P. Kindall
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@izardnoble.com
mkindall@izardnoble.com

*Attorneys for Plaintiffs*