UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ELAINE MALONE and PATRICIA
MCKEOUGH, on Behalf of The University of
Chicago Retirement Income Plan for Employees,
Nova Southeastern University 403(b) Plan, and
All Other Similarly Situated Plans,

        Plaintiffs,       15-cv-08038 (PKC)

    -against-        MEMORANDUM
                AND ORDER

TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA,

        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiffs Elaine Malone and Patricia McKeough bring this action on behalf of The University of Chicago Retirement Income Plan for Employees (the "UC Plan") and the Nova Southeastern University 403(b) Plan (the "Nova Plan," and, along with the UC Plan, "the Plans") alleging that Defendant Teachers Insurance and Annuity Association of America ("TIAA") breached its fiduciary duty to the Plans under section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a) and engaged in prohibited transactions in violation of sections 406(a)(1) and 406(b), 29 U.S.C. § 1106(a)(1) & 1106(b). This putative class action seeks monetary and equitable relief for the Plans and all similarly situated defined contribution pension plans. Based on the facts alleged in the Amended Complaint ("AC"), the Court concludes that TIAA is not a fiduciary of the Plans, thus foreclosing the legal and equitable relief requested. Defendant's motion to dismiss the AC is granted.

BACKGROUND

Malone is a member of the UC Plan for Employees and McKeough is a member of the Nova Plan. (AC ¶¶ 1, 15-16.) The Plans are designed to provide participants, like plaintiffs, income in retirement. (Def.'s Mem. in Supp., May 6, 2016, Dkt. No. 44 at 3.) The employers who sponsor the Plans, the University of Chicago and Nova Southeastern University, entered into agreements under which TIAA agreed to perform certain services for the Plans. (Id.) TIAA provides two types of services to the Plans: (1) investment services; and (2) custodial and record keeping services. (AC ¶ 3.) The custodial and recordkeeping services are administrative services necessary to the operation of the Plans, while the investment services involve the actual investment of Plan assets. (Id.) TIAA is paid an investment fee by the Plans for its investment services. (Id.) As part of the investment services that TIAA provides to the Plans, TIAA offers Group Annuity Contracts to Plan members, which include various pooled fund investment offerings, such as pooled accounts and mutual funds, all of which have a ten-year contract period. (AC ¶¶ 3, 31.) All of Malone's assets in her UC Plan account are invested in a TIAA Traditional Annuity (Contract D055634-2). (AC ¶ 33). Almost all of McKeough's assets in her Nova Plan account are invested in a TIAA Traditional Annuity (Contract D123535-9). (AC ¶ 34).

Payment for the recordkeeping associated with these Group Annuity Contracts is provided for with a "recordkeeping offset," whereby TIAA allocates a portion of the investment fee to pay for these recordkeeping services. (AC ¶ 3.) This practice is common throughout the industry and is known as "revenue sharing." (Id.) This "recordkeeping offset" is paid to defendant pursuant to the Custodial and Recordkeeping Agreements ("RSAs"), which have a five-year contract period. (AC ¶ 27.)

Contrary to what is allegedly common practice, TIAA will not allow this revenue sharing to be paid to a recordkeeper other than itself. (AC ¶ 4.) Thus, if the Plans were to change recordkeepers for the Group Annuity Contracts, they would no longer have the benefit of revenue sharing, i.e., they would continue to pay the investment fee to TIAA, none of which would be used to offset the recordkeeping fees charged by the new recordkeeper, such that the Plans would be required to pay the new recordkeeper in full. (See AC ¶ 4.) In essence, the Plans would have to pay double fees for recordkeeping, both to the new recordkeeper and to TIAA as part of its investment fee. (See id.)

This allegedly makes it financially infeasible for the Plans to switch to a different recordkeeper and as a practical matter locks the Plans into using TIAA as recordkeeper for the duration of the Group Annuity Contracts. (AC ¶ 41.) Consequently (and allegedly), the Plans are prevented from receiving the most competitively priced recordkeeping services on the market and the Plans' participants and their beneficiaries thereby suffer monetary injury. (AC ¶¶ 46, 47.)

TIAA's practice of refusing to share revenue with a potential third party recordkeeper was not a subject of negotiation with the Plans and was not disclosed to the Plans at the time the RSAs were agreed to. (AC ¶¶ 4, 38.) The RSAs themselves are silent on the matter. (AC ¶ 4.) Plaintiffs allege that TIAA denied the Plans access to information needed to evaluate the presence of a conflict of interest arising from TIAA providing the Group Annuity Contracts as well as recordkeeping services. (AC ¶ 42.) In 2012, while preparing for a meeting with a different retirement plan client who was considering alternative vendors, senior relationship managers allegedly instructed employees to tell the representatives of the retirement plan that the plan did not pay fees. (AC ¶ 51.) Defendant allegedly failed to disclose that it charges

individual Plan members a fee for wealth management services after representing that those services were part of the overall package of services provided to the Plans and included in those fees.  (AC ¶ 52.)

LEGAL STANDARD

Rule 12(b)(6), Fed. R. Civ. P., requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a complaint, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

DISCUSSION

I.   The Court has Subject Matter Jurisdiction.

Defendant contends that plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction because the harm complained of is speculative and plaintiffs' theory of liability is premised on actions defendant may or may not take in the future.  "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'"  Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  "Constitutional standing refers to the requirement that parties suing in federal court establish that a 'Case' or 'Controversy' exists within the meaning of Article III of the United

States Constitution." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358 (2d Cir. 2016).

There are three Article III standing requirements: (1) the plaintiff must have personally suffered an injury-in-fact, i.e., an invasion of a judicially cognizable interest which is concrete and particularized as well as actual or imminent, rather than conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct at issue such that the injury is fairly traceable to the challenged conduct; and (3) the injury must be likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). The requirements of Article III standing necessarily extend to claims brought by ERISA plaintiffs suing for a breach of fiduciary duty. These plaintiffs "must establish . . . constitutional standing, meaning the plan participant must . . . assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." Kendall v. Emps. Ret. Plan of Avon Prods., 561 F.3d 112, 118 (2d Cir. 2009) (citation omitted), abrogated on other grounds by Am. Psychiatric Ass'n, 821 F.3d 352.

Plaintiffs allege the Plans are being overcharged for defendant's services as the Plans' services provider. This is a concrete injury-in-fact for which monetary damages or equitable relief would provide redress. It is true that the AC does not allege that the Plans have already attempted to switch to a third party recordkeeper or that defendant has actually withheld the recordkeeping offset from being used as payment for these services. However, plaintiffs' theory is not only that they may suffer injury in the future, but that because TIAA has a colorable argument that the RSAs do not require it to share the recordkeeping offset with a potential future third party recordkeeper, the fees TIAA is charging the Plans right now are excessive in violation

of ERISA.  The Court finds that it has subject matter jurisdiction over the action and that plaintiffs have standing to sue on behalf of the Plans.

    II.    <u>The ERISA Statute of Repose does not warrant Dismissal.</u>

ERISA's statute of repose bars actions commenced:

> [S]ix years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation . . . .

Section 413(1) of ERISA, 29 U.S.C. § 1113(1).

Defendant argues that because the relevant contracts (the RSAs and plaintiffs' annuities) have been in place for more than ten years, whether the injury stems from the act of making the agreements or the omission of failing to disclose defendant's policy of not sharing the recordkeeping offset with third party service providers, the relevant date is when the contracts were made, which is outside the statute of repose.

The Court disagrees, as it is bound to take the facts alleged in the complaint as true and draw all inferences in plaintiffs' favor.  The AC alleges that defendant's policy causes the Plans to pay more for administrative services than they otherwise would and that defendant retains excessive compensation from the Plans' assets.  (AC ¶¶ 46, 47.)  The Plans, and thus the plaintiffs, suffer this alleged injury every time defendant collects fees.  While the AC does not specify the frequency with which fees are collected, it is reasonable to infer that defendant has been paid fees for its services within the last six years.

    III.    <u>Defendant is not a Fiduciary.</u>

Plaintiffs allege that defendant breached its fiduciary duty to the Plans under section 404(a), 29 U.S.C. § 1104(a) and engaged in prohibited transactions in violation of sections 406(a)(1) and 406(b), 29 U.S.C. § 1106(a)(1) & 1106(b).  To breach a fiduciary duty

under section 404(a) one must be a fiduciary in the first place.  Likewise, transactions prohibited by sections 406(a)(1) and (b) are only prohibited with respect to fiduciaries.  The Court's finding that TIAA is not a fiduciary of the plans with respect to the recordkeeping services it provides thus precludes liability under those sections of ERISA.

> Under ERISA:
>
> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.S. § 1002(21)(A).  A plan service provider "may be an ERISA fiduciary with respect to certain matters but not others," such that "fiduciary status exists only to the extent" that the plan service provider "has or exercises the described authority or responsibility over a plan."  Coulter v. Morgan Stanley & Co., 753 F.3d 361, 366 (2d Cir. 2014) (internal quotation marks omitted).  Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  Id. (quoting Pegram v. Herdrich, 530 U.S. 211, 226 (2000)) (alterations in original).

> Plaintiffs contend that TIAA was acting as a fiduciary of the Plans, arguing that:
>
> Defendant became a fiduciary when it exercised discretionary control over the fee to be used as a recordkeeping offset . . . .  By exercising discretion to take these Plan assets subject to its undisclosed policy that it would not share the recordkeeping offset, Defendant exercised its discretion to adopt an undisclosed policy that would enable it to further exercise its discretion to take Plan assets.

(Pl.'s Mem. in Opp., June 6, 2016, Dkt. No. 51 at 15.)  As a practical matter, plaintiffs argue, this "undisclosed policy" prevents the Plans from switching to another recordkeeper, which might charge less for its services.  (Id. at 5.)  The Plans are thus 'locked in' for the full term of the mutual fund or annuity contracts that the RSAs cover.  (Id.)  Consequently, TIAA has used its "discretion to in effect turn a 90-day RSA into a 10-year RSA, thereby using its discretion to lock up the Plans and receive additional recordkeeping compensation as a result thereof."  (Id. at 15.)

This argument is not meritorious.  Calling TIAA's alleged "undisclosed policy" of refusing to share the recordkeeping offset an exercise of discretion does not make it so.  Neither do the allegations that this policy causes the Plans to be "locked in" to the RSA for the full length of the annuity or mutual fund contract, taken as true, establish an exercise of discretion on the part of TIAA or establish that TIAA is a fiduciary of the Plans.  The fact that the fees used to pay for the recordkeeping services are collected *from* Plan assets does not give the collector of those fees authority *over* Plan assets.

It is axiomatic that an exercise of discretion must consist of either an act or an omission.  Plaintiffs point to only two acts or omissions relevant to the determination of TIAA's fiduciary status vis-a-vis its role as service provider to the Plans: the original agreement embodied in the RSAs, including any disclosures made by TIAA or the lack thereof, and the periodic collection of fees, some of which are designated/allocated as the recordkeeping offset.  Neither involves a discretionary act or omission by TIAA.

The original agreement between TIAA and each Plan regarding TIAA's compensation, embodied in the RSA, was not a discretionary act giving rise to fiduciary obligations on behalf of TIAA.

> When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him. Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.

F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987). Plaintiffs have pled no facts that suggest the agreements were not the product of arm's length negotiations or that TIAA had any prior relationship with the Plans, and thus TIAA's act of agreeing with each Plan to receive compensation for its services through the RSA was not a discretionary act that gave rise to a fiduciary duty.

Plaintiffs argue that TIAA's periodic collection of fees, by virtue of TIAA's "undisclosed policy" of not sharing the record keeping offset with potential future third party service providers, is an act of discretion. This argument is unavailing. A service provider's periodic collection of fees is not a discretionary act giving rise to a fiduciary duty. See United States v. Glick, 142 F.3d 520, 528 (2d Cir. 1998) ("[T]he mere deduction of an agent's commission from [plan] assets does not, in itself, create a fiduciary relationship between the agent and the [plan]."). The fact that the service provider could, of course, refrain from collecting the fees he is due does not change this. The analysis is not altered by the existence of an underlying policy to refrain from using the fees in a way that benefits the plans it services in ways not contemplated by the relevant agreements. See Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002) ("We do not believe that 'discretionary authority' can be read to include any concession a plan administrator could gratuitously make to a plan's trustee."). "If a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised

when an [administrator] merely adheres to a specific contract term." Id. at 29 (quoting Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 737 (7th Cir. 1987)).

As discussed above, plaintiffs have pled no facts suggesting that the negotiation of the RSAs was not at arm's length. Nowhere do plaintiffs allege that a potential future refusal by TIAA to share the record keeping offset, allocated as part of the investment fee, with a third party plan servicer, would breach the RSAs. Rather, plaintiffs argue, such a potential future practice amounts to an "undisclosed policy" that violates TIAA's fiduciary duties. But plaintiff cites no case law supporting the argument that such a policy would, in and of itself, amount to an exercise of discretion or make TIAA a fiduciary. Ultimately, plaintiffs are arguing that the Plans made a bad deal and that TIAA's "undisclosed policy," which plaintiffs admit is consistent with the RSAs, is nonetheless inconsistent with TIAA's fiduciary duties to the Plans, without any underlying support as to why TIAA is a fiduciary in the first place. The Court cannot conclude based on the facts pled in the complaint that TIAA was a fiduciary of the Plans with respect to its role as reckordkeeper. Counts I-III, which are predicated on TIAA being a fiduciary in such role, are thus dismissed.

IV.   Plaintiffs are not entitled to Equitable Relief.

Plaintiffs also bring claims for equitable relief under section 502(a)(3), 29 U.S.C. § 1132(a)(3) to recover excess amounts paid to TIAA by the Plans, the Plan investment options, and any other source due to TIAA's control of Plan assets. Plaintiffs allege that through its 'undisclosed policy' of refusing to share the revenue offset with a potential future third party plan servicer, TIAA failed to disclose a source of compensation and has retained monies that exceed the value of the services provided. (AC ¶¶ 105-07). These monies, plaintiffs argue, constitute excess fees beyond reasonable compensation for TIAA's services. (AC ¶ 109.)

Plaintiffs allege that TIAA failed to satisfy its disclosure obligations under 29 C.F.R. § 2550.408b-2(c) and instructed employees not to disclose information required to be disclosed by the Department of Labor's Fee Disclosure Rule.  (AC ¶ 110.)  Plaintiffs further allege that:

> Defendant failed to provide an estimate of its indirect compensation for recordkeeping and administration, failed to provide an explanation of the methodology and assumptions used to prepare the estimate and a detailed explanation of the recordkeeping services that will be provided to the covered plan, and failed to take into account, as applicable, the rates that it, an affiliate, or a subcontractor would charge to, or be paid by, third parties, or the prevailing market rates charged, for similar recordkeeping services for a similar plan with a similar number of covered participants and beneficiaries.

(Id.)

Plaintiffs essentially argue that either (a) the Plans made a bad deal, or (b) that TIAA is treating the Plans unfairly, contrary to conventions within the industry, but not contrary to the contract, and, because TIAA is not a fiduciary of the plans, not contrary to law.  If the former is the case, then plaintiffs' appropriate remedy is against the Plans themselves for making a bad deal against the interests of its members.  In the latter circumstance, equitable relief is not available according to the Supreme Court's and the Second Circuit's interpretation of section 502(a)(3).

Plaintiffs argue that monetary damages may be awarded as equitable relief under section 502(a)(3) as a "surcharge" against defendant, citing CIGNA Corp. v. Amara, 563 U.S. 421 (2011).  (Pls.' Mem. in Opp., June 6, 2016 at 22-23.)  However, CIGNA Corp. involved a claim by an ERISA plan member against a fiduciary, which defendant is not.  See 563 U.S. at 439 ("[T]he fact that the defendant in this case . . . is analogous to a trustee makes a critical difference.").  The Supreme Court in Mertens v. Hewitt Assocs., 508 U.S. 248, 251-53, 263 (1993) found that compensatory damages against a non-fiduciary were not available under

section 502(a)(3). Because defendant is not a fiduciary of the Plans with respect to the recordkeeping services it provides, the Plans may not recover compensatory damages under a surcharge theory.

Plaintiffs are further barred from recovering what would essentially be compensatory damages as restitution under section 502(a)(3) because "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession," such as through the mechanism of a constructive trust or an equitable lien on that property. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002) (restitution not appropriate under section 502(a)(3) where petitioners sought payment under a contract rather than particular funds belonging to petitioners held by respondent). Plaintiffs have identified no particular funds or specific property against which they would be entitled to equitable relief. They essentially seek compensatory damages as equitable relief, which is not appropriate under section 502(a)(3). Neither can plaintiffs recover on a disgorgement theory of equitable relief against a non-fiduciary as contemplated in Buffalo Labor Sec. Fund v. J.P. Jeaneret Assocs. (In re Beacon Assocs. Litig.), 818 F. Supp. 2d 697, 707-08 (S.D.N.Y. 2011), as the theory of liability in that case was premised on defendant's actual or constructive knowledge of the unlawfulness of the transactions defendant engaged in, and plaintiffs have failed to plead sufficient facts in the complaint to establish that defendant's alleged actions were unlawful.

Plaintiffs are not entitled to recovery under section 502(a)(3) as their claims for relief are legal rather than equitable in nature and thus not appropriately brought under section 502(a)(3).

CONCLUSION

Plaintiffs have not pled facts sufficient to establish that defendant was a fiduciary of the Plans with respect to its role as service provider, a condition precedent for all of plaintiffs' claims for legal relief. Equitable relief is not appropriate in this case. Defendant's motion to dismiss is thus GRANTED. The Clerk of the Court is directed to enter judgment for defendant TIAA.

SO ORDERED.

                                                  P. Kevin Castel
                                       United States District Judge

Dated: New York, New York
         March 7, 2017